IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Nalco Company, | ) | No. 08 C 2708 |
| | ) | |
| Plaintiff, | ) | |
| | ) | The Honorable William J. Hibbler |
| v. | ) | |
| | ) | |
| Environmental Management, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Nalco sued Environmental Management, for breach of contract and negligence. Environmental Management moves to dismiss the complaint for lack of personal jurisdiction and improper venue. For the reasons set forth below, the Court DENIES these motions.

### I.   Factual Background

*The Parties*

Nalco—a Delaware corporation with its principal place of business in Illinois—manufactures chemicals. (Compl. ¶¶ 1- 3) Environmental Management Inc.,—an Oklahoma corporation with its principle place of business in Oklahoma—specializes in the removal and disposal of chemical waste. (Bobo Dep. 9; Bobo Aff. ¶2) In 2000, Nalco and EMI finalized a Master Environmental Services Agreement whereby EMI

1

would provide clean-up and transportation services for Nalco.[1] (Bobo Aff. ¶ 3; Def.'s Ex. 3) EMI's President—Terry Bobo—signed the agreement on behalf of EMI and delivered it to Nalco.[2] (Bobo Aff. ¶ 4)

### The Mississippi Project

On June 22, 2006, Nalco identified an accidental mixture of two chemical products that it mistakenly provided to a customer in Mississippi. (Compl. ¶ 14) Nalco then contacted EMI and asked them to remove the potentially hazardous chemicals from the customer's storage tanks. (Compl. ¶ 15) Later that day, EMI went to the site and removed the chemicals from the customer's tanks and cleaned the facilities. (Compl. ¶ 14) Nalco alleges that, per the parties' contract, EMI was to arrange for the removal and disposal of the chemical waste. (Compl. ¶ 15) But according to Nalco, EMI left the waste on the customer's property for an extended period of time. (Compl. ¶ 17) Eventually, one of the customer's employees damaged the storage tank and spilled chemicals onto the customer's property. (Pl.'s Compl. ¶ 17) Nalco alleges it incurred damages from the ensuing clean-up, and that:

> [B]ut for the breaches by EMI ... the damage to the storage tank(s) holding the chemical waste would not have occurred, as those storage tanks and their contents would and should have been removed from the customer's property well before the date of the damage.

(Compl. ¶ 24)

### The Lawsuit

---

[1] It appears that the parties were working under a similar agreement since 1998. (Bobo Aff. ¶ 3).
[2] The contract contains an Oklahoma choice of law provision. Contrary to EMI's argument, this does not end the Court's inquiry into whether it can properly exercise jurisdiction over a non-resident defendant. *Bolger v. Nautica Intern., Inc.*, 861 N.E.2d 666, 671 (Ill. App. Ct. 2007)(noting that choice of law provision is relevant, but is not sufficient to confer jurisdiction).

On March 20, 2008, Nalco sued EMI in the Circuit Court of Cook County, Illinois. Nalco's complaint contains two counts: (1) breach of contract; and (2) negligence. Subsequently, EMI removed the case to this Court on the basis of diversity of citizenship.

### *EMI's Motion to Dismiss*

EMI now asserts the Court lacks personal jurisdiction. In EMI's own words: "EMI has not consented to jurisdiction, was not served in Illinois, was never, 'doing business' in Illinois and does not have domicile or residence in Illinois, the Court does not have personal general jurisdiction over [EMI]." (Mot. to Dismiss at 3) Nalco, of course, disputes these claims. A motion to dismiss for lack of personal jurisdiction depends largely on case-specific facts. Accordingly, the parties have submitted affidavits and deposition testimony establishing the following facts.

### *Facts Bearing on Jurisdiction*

Before the Court can ascertain whether it has personal jurisdiction over a non-resident defendant, the Court must first determine the extent of the defendant's contact with Illinois. EMI does not have any offices, employees, or agents in Illinois. (Bobo Aff. ¶ 7) EMI does not maintain a bank account in Illinois, nor does it own property in Illinois. (Bobo Aff. ¶ 7) This, however, does not mean that EMI has no contacts with Illinois.

EMI handles hazardous waste from clients located throughout the United States. (Bobo Dep. at 10) In fact, EMI holds a specific license to handle and transport hazardous waste through, into or out of Illinois. (Bobo Dep. at 32) EMI advertises on its website that it is licensed in Illinois.. (Resp. Br. Ex. 7; Bobo Dep. at 35) EMI's employees have

3

also conducted meetings in Nalco's Illinois headquarters. Specifically, Bobo and various EMI employees have been to Nalco's headquarters on 3 or 4 occasions. (EMI Interrog. ¶ 6, 19; Bobo Deb ¶ 44-45). Apparently these meetings went well, because EMI has performed *more than 200* projects for Nalco. (Bobo Dep. at 63) As a result, EMI has sent Nalco hundreds of invoices, and has placed a number of calls, e-mails and letters to Illinois. (Bobo Dep. at 72-73) In addition, EMI mailed a certificate of insurance to Nalco's Illinois headquarters every year since the formation of the contract. (Bobo Dep. at 87-88) EMI estimates that in some years, the value of its work done for Nalco exceeds $500,000. (Bobo Dep. at 48)

EMI's contact with Illinois businesses is not limited to Nalco. Since EMI began working with Nalco in 1998, EMI has contracted with 11 different companies headquartered in Illinois. (EMI Interrog. ¶ 1) EMI signed its most recent contract with an Illinois company in 2007. (EMI Interrog. ¶ 1) EMI's work for these companies has resulted in 33 different invoices. (Bobo Dep. at 97) Moreover, some of the contracts with Illinois corporations were "automatically renewing" *i.e.*, the contract would continue in perpetuity unless a party took an affirmative step to end the relationship. (Bobo Dep. at 38).

In addition to performing work on behalf of Illinois clients, EMI has also performed work *in* Illinois. On 2 occasions, EMI was hired by an out-of-state client to clean up chemical spills that occurred in Illinois. (Bobo Dep. at 61; EMI Interrog. ¶ 9, 12.) As part of a multi-state clean-up, EMI once removed contaminated soy-beans that had spilled in Illinois. This particular job lasted 8 to 9 weeks and was staffed with EMI's own employees and trucks. (EMI Interrog. ¶13; Bobo Dep. at 57, 59) In addition to

transporting chemicals through, and out of Illinois, EMI ships chemicals *into* Illinois. Specifically, EMI ships mercury to Evanston, Illinois for reclamation. (Bobo Dep. 67-68). The number of shipments depends on the amount of mercury collected, but the shipments occurred at least a few times each year. EMI also has 4 to 6 subcontractors in Illinois that perform work on its behalf. EMI has performed audits in Illinois to check the quality of the subcontractor's work. (EMI Interrog. ¶ 9, 16; Bobo Dep. at 17) EMI's president even personally performed one of these audits in Chicago. (Bobo Dep. at 75.) Finally, EMI's President has traveled to Chicago every year for the last 16 or 17 years to represent a client at a trade convention. (Bobo Dep. at 6.)

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) allows defendants to challenge the court's authority to assert jurisdiction over non-resident defendants. Under12(b)(2), the burden of proof rests with the party asserting jurisdiction. *Central States v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). In determining whether to exercise personal jurisdiction, a court may examine affidavits and other evidentiary materials submitted by the parties. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987) ("The allegations in his complaint are to be taken as true unless controverted by the defendants' affidavits."). If the court decides material facts are in dispute, the Court can hold an evidentiary hearing where the party asserting jurisdiction must prove its allegations. *Hyatt Intern. Corp. v. Coco.*, 302 F.3d 707, 713 (7th Cir. 2002). Here, there are no disputed material facts. Accordingly, the Court will resolve this motion based on the parties' affidavits, interrogatories, and deposition testimony.

### III. Analysis

#### A. *Personal Jurisdiction and the Illinois Long-Arm Statute*

A federal court sitting in diversity jurisdiction applies the laws of the forum state. *Neuman & Assoc., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir. 1994). The Illinois Long-Arm statute provides a list of activities which permit Illinois Courts to exercise jurisdiction over out-of-state defendants. 735 ILCS 5/2-209(a). Here, the relevant provision is 735 ILCS 5/2-209(b)(4); which allows courts to exercise jurisdiction over corporations "doing business" in Illinois. *Asset Allocation and Mgmt. Co. v. Western Ins. Co.*, 892 F.2d 566, 570 (7th Cir. 1990) ("a defendant corporation that does business in Illinois on a regular basis may be sued in an Illinois court even if the plaintiff's cause of action does not grow out of that business."). For jurisdictional purposes, "doing business" means the defendant has continuous, and ongoing contacts with Illinois that are neither occasional nor causal. *Reeves v. Baltimore & Ohio R.R. Co.*, 171 Ill. App. 3d 1021, 526 N.E.2d 404, 407 (Ill. App. Ct. 1988) ("[J]urisdiction under our 'doing business' standard is premised on the idea that a nonresident corporation that purposefully does business in Illinois has consented to being sued in Illinois ..."). Thus, a defendant must take the bitter with the sweet. If a defendant chooses to do business with Illinois corporations, the defendant may have to defend itself in an Illinois court. Accordingly, the Court finds that it can exercise personal jurisdiction over EMI.

When an out-of-state defendant regularly contracts with Illinois companies, the defendant is subject to personal jurisdiction in Illinois. *Neuman*, 15 F.3d at 725. For example, in *Neuman* the defendant was based in New York and had "no affiliates, subsidiaries, offices, agents, employees, or property in Illinois." *Id.* at 723. The

defendant, however, had a sales representative (based in Wisconsin) that consistently sold goods to Illinois corporations. *Id.* The court held jurisdiction was proper because the defendant "exhibited a regularity of contact with Illinois over the years" and working with Illinois customers was "business as usual" for the defendant. *Id.* at 724. Like the defendant in *Neuman*, EMI's decision to work with Illinois customers was "business as usual."

EMI has had a continuous business relationship with Nalco since at least 1998, and has performed more than 200 projects for Nalco. Beyond EMI's relationship with Nalco, EMI has entered into contracts with 11 Illinois companies since 1998. In fact, some of these contracts **re-new automatically**. There is no doubt that EMI was completely comfortable having Illinois clients. EMI has also coordinated two clean-up efforts for waste removal in Illinois in 2002 and 2004. Moreover, every year EMI ships hazardous chemicals (Mercury) into Evanston, Illinois. Thus, EMI's business activities in Illinois are sufficient for this Court to appropriately exercise personal jurisdiction over EMI. *See, e.g., Adventus Americas Inc. v. Innovative Environmental Technologies, Inc.*, No. 06-C3267, 2007 U.S. Dist. LEXIS 15611, *19 (N.D. Ill. March 5, 2007) (exercising jurisdiction over a Pennsylvania defendant that had previously performed environmental remediation services at four locations in Illinois, "each of these did not involve a single, isolated or sporadic visit to the state. In fact, according to [defendant's] own press release ... [defendant's] relationship with a former gas station in Roseville, Illinois, approximately lasted a year and a half.").

Traveling to a forum state for meetings held "in furtherance of" a contract is another basis by which the court can establish jurisdiction. In *Neiman*, the defendant—a

United Kingdom corporation—traveled to Illinois to meet with the plaintiff to discuss a potential contract. *Neiman v. Rudolf Wolff & Co., Ltd.*, 619 F.2d 1189, 1193 (7th Cir. 1980). The defendant moved to dismiss for lack of personal jurisdiction, but the Seventh Circuit held that the defendant's meetings in Illinois conferred jurisdiction:

> If we credit [the plaintiff's] version ... that meeting was a significant contact by the defendants with Illinois. Although this conversation, even by [the plaintiff's own testimony, did not constitute the entire dealings between the parties or the entry into a completed contract, neither of these results is necessary to satisfy the requirements of due process.
>
> ... a defendant's participation in one or two brief meetings in the forum state has been held sufficient for the exercise of personal jurisdiction when significant negotiation of important terms of the transaction occurs. Since, according to [the plaintiff's] version of the luncheon meeting, the discussion resulted in agreement on important terms of the arrangement, this contact with Illinois was very significant.

*Id.* at 1193.

Here, the parties have a contractual relationship. The range and scope of this contract has been the subject of previous meetings between EMI and Nalco. These meeting were not mere social gatherings. Bobo, as well as other EMI employees, visited Nalco's Illinois headquarters to discuss the technical issues of EMI's service contract. Additionally, EMI's president has been coming to Chicago every year for the last 16 or 17 years to attend a convention on behalf of a client. EMI's trips to Illinois are not random or casual. These trips are to preserve, solidify and refine EMI's relationship with its Illinois clients. This is yet another example of EMI's meaningful contacts with Illinois. *See, e.g., Brandt Consol., Inc. v. Agrimar Corp.*, 801 F.Supp. 164, 169 (N.D. Ill. 1992) (finding that personal jurisdiction was proper where the president of the non-resident defendant company traveled to Illinois to negotiate a contract with the plaintiff company that ultimately led to the present litigation.).

8

Finally, when a non-resident defendant holds a license to conduct a specific type of business in Illinois, the defendant may be subject to jurisdiction under the Illinois Long-Arm statute. *See, e.g., In Re LimitNone, LLC*, 551 F.3d 572, 575 (7th Cir. 2008)("Google is licensed to do business in the State of Illinois and does business in the Northern District of Illinois. We have no doubt that the federal court sitting in that district had personal jurisdiction over Google."). Here, EMI chose to obtain a license that would allow it to conduct business in Illinois. EMI's website specifically *advertises* Illinois as one of the 21 states in which EMI is licensed to transport hazardous waste. Nalco argues EMI obtained this license because it is doing business in Illinois. The Court agrees. *See, e.g., Beale v. Revolution Portfolio, LLC*, No. 07-C6909, 2008 U.S. Dist. LEXIS 82482, *8 (N.D. Ill. Oct. 16, 2008) (exercising jurisdiction over non-resident defendants because, "[the defendants] are licensed by the state of Illinois to act as insurance agents within this state ... These allegations demonstrate that they voluntarily sought the benefits and protections of Illinois law, actions which constitute prima facie evidence that they transacted business in Illinois and permit an exercise of personal jurisdiction."). EMI's actions contradict its claim that it neither has, nor wants, any meaningful relationship with Illinois.

The Court finds that it can exercise jurisdiction over EMI pursuant to the Illinois Long-Arm statute.

**B.** *Purposeful Availment & Fundamental Fairness*

The Court's finding that it can assert jurisdiction over a non-resident defendant does not end the jurisdictional inquiry: "Once it is clear that an Illinois court may exercise personal jurisdiction pursuant to the long-arm statute, a court must determine

whether the exercise is consistent with federal due process requirements." *Neuman*, 15 F.3d at 725. Thus, the Court must determine whether it is fair to have EMI stand trial in an Illinois court. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997). The touchstone of the due process analysis is foreseeability. *Heritage House Rest. v. Continental Funding Group*, 906 F.2d 276, 283 (7th Cir. 1990). In other words, are the defendant's contacts with Illinois of such a pervasive character that it has fair warning that it may be haled into an Illinois court? *World-Wide Volkswagen v. Woodson*, 100 U.S. 559, 562 (1980). Here, the answer is yes.

EMI holds a license to transport hazardous waste in Illinois. Accordingly, EMI actively sought the benefits of privileges of doing business in Illinois. The fact that EMI specifically advertised this license on its website proves indicates that EMI hoped and expected to do business in Illinois. Additionally, EMI has entered into contracts with 11 companies headquartered in Illinois, and has maintained a ten-year relationship with Nalco and performed more than 200 projects for Nalco. EMI has also done work in Illinois and maintains a handful of subcontractors for projects in Illinois. Further, EMI ships hazardous chemicals every year, to Evanston, Illinois. It stands to reason EMI could reasonably anticipate being haled into an Illinois courts as a result of these contacts.

Accordingly, he Court denies EMI's motion to dismiss for lack of personal jurisdiction.[3]

---

[3] EMI also claims that venue is improper. Under 28 U.S.C. 1391(c), for purposes of determining the proper venue, a corporation resides in any judicial district in which it is subject to personal jurisdiction. The Court has determined that EMI is subject to personal jurisdiction in the Northern District of Illinois. Therefore, venue is proper under 1391(a)(1) *Images of the World v. Cont'l Am. Indus., Inc.*, 2005 U.S. Dist. LEXIS 18879, No. 04 C 7002, *15 (N.D. Ill. Aug. 30, 2005)("Venue is appropriate in the Northern District of Illinois when the exercise of personal jurisdiction is proper.").

IT IS SO ORDERED.

3/31/09   Wm. J. Hibbler
Dated     The Honorable William J. Hibbler
          United States District Court